482

KENNETH A. MYRDA, Plaintiff-Appellee and Cross-Appellant, v. CORO-
NET INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—91—0111

Opinion filed November 22, 1991.

Enrico J. Mirabelli and Attilio V. Fiumetto, both of Enrico J. Mirabelli & Associates, of Chicago, and James O'Dea, of Palos Hills, for appellant.

David W. Alspaugh, of Wheaton, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

This is an action for breach of an insurance contract (the contract). Defendant, Coronet Insurance Company, appeals from an order awarding plaintiff, Kenneth A. Myrda, attorney fees pursuant to section 155 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1989, ch. 73, par. 767). Plaintiff cross-appeals from the same fee award. Defendant argues that the trial court abused its discretion in finding that defendant's handling of plaintiff's claim was vexatious and unreasonable. Plaintiff argues that the trial court abused its discretion in awarding substantially less than the amount of fees actually incurred and for which he petitioned.

Plaintiff owned a 1983 Pontiac Grand Prix automobile. The contract, in effect from August 19, 1988, through August 19, 1989, insured plaintiff against loss of the car by theft or larceny.

The contract consisted of a "Declarations Page with Policy Provisions" and a printed "Family Combination Automobile Policy." The declarations page gave $5,125 as the "stated value" of the car, specified a $250 deductible, and provided that in the event of loss adjustment would be based on the actual cash value of the car at the time of loss. However, section III of the printed policy, covering among other matters loss by theft or larceny, stated that "[a]ny portion of this policy to the contrary notwithstanding, in the event of a loss [including by theft or larceny] wherein damages sustained to the vehicle stated herein, minus a deduction for depreciation as hereinafter set forth, and minus the deductible amount, the company shall have the following options; (1) Payment to the insured of the stated value of the vehicle minus depreciation, calculated in accordance herewith, and minus the deductible stated in the policy declarations; or (2) Replacement of the vehicle ***; or (3) Payment of the amount the company would have paid for a replacement vehicle; or (4) Repair or rebuild the automobile." Section III provided that in the event the company elected to treat the automobile as a total loss, its liability would be limited to payment of the stated value listed in the declarations minus the deductible and minus 2% of the stated value for each month or part thereof that the policy was in force.

We first set out the procedural history of this action. On September 11, 1989, plaintiff filed his original complaint for breach of contract, alleging the following. On either July 8 or July 9, 1989, the car was stolen. On or about July 20, 1989, the Elgin police department recovered the badly damaged car, which had a fair-market value of $350. Plaintiff had performed all the conditions of the contract, but defendant had unreasonably and vexatiously refused to pay his claim. As finally amended by a January 8, 1990, circuit court order, the complaint prayed for $3,645 for the value of the automobile as determined by paragraph III of the policy, $647 for storage and towing as covered by the contract and $911.20 pursuant to section 155 of the Code for vexatious and unreasonable delay, for a total claim of $5,203.20.

On October 27, 1989, defendant filed its appearance along with a demand for a jury trial.

On December 18, 1989, defendant offered to settle the entire claim, including attorney fees, for $4,000. Plaintiff rejected the offer.

On December 22, 1989, plaintiff moved for judgment by default. The court denied the motion and granted defendant leave to file its answer.

The case went to arbitration. On March 7, 1990, the panel of arbitrators awarded plaintiff $7,625, representing $3,645 for the automobile, $55 for storage costs, $925 for "unreasonable action" by defendant, and $3,000 for "reasonable attorney fees." On March 22, 1990, defendant rejected the award and demanded a trial on the complaint. On April 20, 1990, the court, having been informed that defendant was demanding a jury trial, struck the previously scheduled bench trial date of June 18 and ordered both parties to prepare jury instructions for a scheduled trial date of August 1, 1990.

On August 1, 1990, the court allowed defendant to withdraw its jury demand. The court set the trial for September 13, 1990. After trial on that date, the judge awarded plaintiff $3,938. This figure represented $3,150 due under the contract and a $788 penalty assessed pursuant to section 155(1)(a) of the Code. The court found further that defendant had handled plaintiff's claim vexatiously and unreasonably. It therefore granted plaintiff leave to petition for attorney fees pursuant to section 155 of the Code. Plaintiff submitted an itemized fee petition for $15,233.35. On December 28, 1990, after a hearing, the court awarded him $3,500, or somewhat less than one quarter of the requested amount. Defendant timely appealed the December 28 order, and plaintiff timely cross-appealed from the same order.

We now turn to those additional facts necessary to an understanding of the issues on appeal. On July 9, 1989, plaintiff reported the theft to the Glendale Heights police department. According to the police report, plaintiff informed the police that somebody stole his car from in front of his house in Glendale Heights. Plaintiff also told the police that the value of the car was $3,000.

Defendant wrote plaintiff on July 10, 1989, informing him of the steps necessary to process a claim. The correspondence was on stationery with both defendant's name and address and that of the Elston Claim Service, Inc. (Elston), on the letterhead. Included in this correspondence was a letter requesting that plaintiff submit to a polygraph examination; if plaintiff did not agree to the test, he would be required to give a statement under oath in the presence of a court reporter. On July 20, 1989, plaintiff, not yet represented

by counsel, took two polygraph tests at Elston's address. The examiner, Mitchell J. Radycki, informed Elston four days later of his opinion that plaintiff was not telling the truth when he denied that he had been lying in saying his car had been stolen, when he denied that he was trying to cheat defendant and when he said that he did not know who had his car at the time of the examination. Radycki also stated that plaintiff had said that he was "mad at the world" because he was broke and had to spend money to have the car fixed.

By letter of July 25, 1989, the Elgin police department informed plaintiff that on July 20 plaintiff's car was towed from 275 Beverly Terrace at the Elgin police department's request. The letter informed plaintiff that he could pick up his car at Ohm's Car Care in Elgin.

On August 1, 1989, defendant wrote to plaintiff that it was denying his claim because the results of defendant's investigation indicated that the loss did not occur as plaintiff had reported. Plaintiff, through counsel, wrote back requesting a proof of loss form; on August 16, defendant informed plaintiff's attorney by letter that it was standing by its decision. The letter was written by Joe Edgington, identified as "claim manager." The litigation then ensued.

Before trial, the court ruled that evidence of plaintiff's polygraph examination was admissible only as it bore on whether defendant's handling of the claim was vexatious and unreasonable. The court also denied plaintiff's motion for summary judgment.

Trial was held on September 13, 1990. Dennis Schar, a Glendale Heights police officer, testified that on July 9, 1989, plaintiff told him that between 11 p.m. the previous day and 11 a.m. that day someone stole plaintiff's car from in front of his house. Schar filled out a police report.

Norman Landwehr of the Elgin police department testified that on July 20, 1989, he notified the Glendale Heights police department that plaintiff's car had been found. Landwehr arranged for Ohm's Towing to move the car to its lot in Elgin.

On cross-examination, Landwehr stated that he had examined the car. He saw that it had no plates, that there were dents and scratches, and that there was damage to the taillights, the radiator and the rear seat. He found the car by responding to an anonymous telephone report of an Hispanic male stripping a stolen car; he found the stripped vehicle about 100 feet from the site. The court

sustained plaintiff's objection when defendant asked Landwehr if he had ever investigated "thefts" by vehicle owners themselves.

Marianne Myrda, plaintiff's mother, testified that she was living at her son's address at the time of the theft. Plaintiff came home about 11:15 p.m. and parked his car outside. At about 11:30 p.m., as the two were talking and watching television, she heard the dog growl. The next morning, plaintiff looked out the door and told her that his car was gone. Plaintiff never indicated to her that he had sold or lent the car to anyone.

Plaintiff's account of the theft was similar to Marianne Myrda's. Plaintiff testified further that at the time of the theft he had made all of the insurance payments on the car. Immediately before taking the polygraph examinations he told the examiner that he was mad at the world because he had just installed a new transmission in the car. On or about July 21, 1989, plaintiff saw his car at Ohm's Towing and took photographs, admitted into evidence, of the damage.

On cross-examination, plaintiff stated that his car's license plates, which were due to expire in September 1989, were never recovered. Plaintiff's insurance policy was due for renewal in August 1989; he was paying $1,000 a year for insurance. About two weeks after the theft, plaintiff bought a 1973 Chevelle for $400. At the time of the theft, plaintiff owed his credit union $1,000 on the Grand Prix. When he reported the theft to Officer Schar, plaintiff estimated that the car was worth $3,000. After the car was stolen, plaintiff completed the payments on it. He did not know anyone in Elgin. Plaintiff did not recall whether his attorney had informed him of defendant's settlement offer in December 1989.

Defendant put on no evidence. After closing arguments, the court found for plaintiff. The trial judge held initially that plaintiff was entitled to recover $3,152 for breach of contract. This figure included $3,000 for the value of the car; the judge explained that plaintiff's testimony that the car was worth this much at the time of the theft superseded the $3,645 figure on the declarations page of the contract. The trial judge added $702 for towing and storage and deducted the $300 salvage value and the $250 deductible.

The judge held second that defendant's failure to pay the claim was unreasonable and vexatious. The judge noted that although defendant advanced the theory that plaintiff had "stolen" his own car, defendant had put on no evidence to support this affirmative defense and there was no other evidence to support defendant's theory. The judge also explained that there was no evidence of the qualifications of defendant's polygraph examiner or that "this was

an actual polygraph examination." The court awarded plaintiff an additional $788, or 25% of the verdict, pursuant to section 155(1)(a) of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 767(1)(a)). The court then granted plaintiff's attorney leave to file a petition for fees.

Plaintiff's attorney, David Alspaugh, filed an itemized petition for $15,233.35 in attorney fees. This amount was based on Alspaugh's hourly rate of $100 for both court and office time.

On December 12, 1990, the court heard evidence on the petition. Victor J. Cassato, an experienced insurance litigator, stated that he was familiar with Alspaugh, who had a good reputation, and that Alspaugh's $100 hourly rate was very reasonable. Cassato had reviewed part of the file in this case and opined that the overall bill was "more than reasonable." He acknowledged that the court would have to deduct any charge for the 15 minutes he and Alspaugh consulted on the petition.

Plaintiff's attorney Alspaugh also testified. He observed that the arbitrators had concluded in their March 7, 1990, ruling that defendant had acted unreasonably in handling plaintiff's claim. He conceded that plaintiff had rejected defendant's offer to settle the entire claim for $4,000.

On December 28, 1990, the trial court entered an order awarding plaintiff $3,500 attorney fees. In explaining her decision, the judge observed that the case had been very hotly contested and that "[e]very issue that could possibly have been litigated was litigated." She observed that defendant withdrew its jury demand on the day originally scheduled for trial, that it did not appear by its regular counsel at trial, and that it presented no testimony at trial. However, a "countervailing factor" was that plaintiff rejected a settlement offer in excess of the ultimate verdict. Plaintiff was therefore partly responsible for the intensity and complexity of the litigation. The judge explained further:

"[O]nce that settlement offer was rejected, the defendant continued its previous course of contesting the matter up until the day of trial when there was no testimony presented on behalf of the defendant.

Given the equities of the situation *** I think all of [plaintiff's attorney's] work was of a good quality and was necessitated by the level of contest. However, his client must personally bear some of the responsibility for that, having rejected what in retrospect was quite a reasonable offer of settlement.

Having said that and with respect to the equities in the case, I think that an appropriate amount of attorneys' fees should be awarded [plaintiff] for the expense that was involved in bringing this matter to a conclusion. I think an appropriate amount of attorneys' fees would be $3500. And that will be the award of the Court for attorneys' fees.

As I stated before, I think [plaintiff's attorney's] time was documented but that his client must bear some responsibility for the necessity of [his attorney's] spending that much time on the case."

Defendant timely appealed from the judgment. Plaintiff timely cross-appealed.

We first address defendant's argument that the trial court abused its discretion in awarding plaintiff attorney fees for defendant's unreasonable and vexatious conduct. Defendant argues that this finding was improper because there was a genuine dispute over whether defendant was liable and because plaintiff's ultimate recovery was well below his original claim. We hold that the trial court acted properly in awarding fees.

■ Section 155 of the Code enables a court to award a successful party reasonable attorney fees where it appears to the court that an action or a delay in settling a claim is vexatious and unreasonable. In deciding whether an insurer is liable, a trial court should consider the totality of the circumstances, including the insurer's attitude. (*Norman v. American National Fire Insurance Co.* (1990), 198 Ill. App. 3d 269, 304-05.) Whether to impose liability under this section is within the discretion of the trial court. *Norman*, 198 Ill. App. 3d at 304-05; *Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 554-55.

■ Defendant correctly asserts that an insurer does not violate the statute merely by insisting on a trial at which it loses. (*Keller*, 180 Ill. App. 3d at 555; *Mohr v. Dix Mutual Country Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 999.) However, we believe that the trial court correctly found not merely that defendant was unsuccessful but that its refusal to pay was unreasonable. The judge questioned defendant's reliance on the polygraph examination, implying that she doubted that defendant had ever had a good reason not to settle. Moreover, as the judge noted, defendant's own conduct, particularly in the later stages of this litigation, belies its assertion that it had a *bona fide* defense to liability on the contract. Defendant put on no evidence at trial to support its theory that plaintiff was guilty of fraud, yet defendant insisted on a trial. Fur-

ther, the arbitrators had found six months earlier that Coronet's refusal to pay the claim was vexatious and unreasonable.

In asking us to reverse the trial court's exercise of its discretion, defendant relies primarily on a single case, *Marvel Engineering Co. v. Commercial Union Insurance Co.* (1983), 118 Ill. App. 3d 844. There we *upheld* the trial court's discretionary denial of attorney fees. Defendant focuses on one of the factors on which we based our holding, the disparity between the plaintiff's claim and the ultimate award. Here plaintiff's claim of $5,203.20 was not grossly in excess of the ultimate verdict. More importantly, the insurer in *Marvel Engineering* raised a *bona fide* defense to the claim, and much of the evidence in that case was complex and disputed. *Marvel Engineering* cannot fairly be read to support reversing the trial court's exercise of discretion here.

We turn now to plaintiff's cross-appeal. Plaintiff argues first that the trial court abused its discretion in granting him only $3,500 in attorney fees despite finding that his attorney's hourly charge was reasonable and that all of the work upon which plaintiff's fee petition was based was necessary to the litigation. Plaintiff argues that the decision to award less than the full amount requested by the petition was against the manifest weight of the evidence. Plaintiff further argues, and relatedly, that because evidence of settlement offers is ordinarily inadmissible in a proceeding to award attorney fees (see *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 640-41), the trial court erred in reducing the fee award because of plaintiff's refusal to accept the settlement that defendant offered in December 1989.

■ Plaintiff never objected at the trial level to the introduction of evidence that defendant offered to settle the suit for $4,000 in December 1989. Insofar as his argument on appeal concerns the erroneous admission of evidence, it is therefore waived. (*Walker v. Midwest Emery Freight Systems, Inc.* (1990), 200 Ill. App. 3d 790, 800-01.) Disregarding the waiver rule, we are still unable to agree with plaintiff that the evidence of a settlement offer was improper in this context. Plaintiff sought to recover attorney fees based on his assertion that defendant vexatiously and unreasonably delayed paying his claim. For a trial court to evaluate such an assertion without being able to consider evidence that the insurer tried in good faith to settle the claim would risk unfairness and would not necessarily be conducive to any public policy of promoting rapid settlements of suits on insurance contracts.

■ Nonetheless, we believe plaintiff is correct in asserting that the fact of the settlement offer did not entitle the trial court to reduce the fee award under the circumstances of this case. Although section 155 of the Code allows a court to award an insured attorney fees for the insurer's unreasonable or vexatious refusal to settle, it does not alter the general rule that the decision to refuse a settlement offer is ordinarily a matter of judgment and that a party should not be penalized for exercising such judgment. (*Passiales*, 144 Ill. App. 3d at 641; *Bellow v. Bellow* (1981), 94 Ill. App. 3d 361, 371.) Had plaintiff's rejection of the offer amounted to unreasonable or vexatious conduct, we would be more inclined to share the trial judge's balancing of the equities. However, the record indicates that at the time of the offer plaintiff had good reason to expect that, even without attorney fees, a verdict would exceed the offer. Furthermore, attorney Alspaugh's fee petition shows that by the time of the offer plaintiff had used at least 13 hours and 10 minutes worth of Alspaugh's time, representing over $1,300 in fees, to press a claim that the trial court concluded defendant had no reasonable basis to deny. Plaintiff therefore behaved reasonably in rejecting the offer. Defendant could have made a better offer but never did so, thereby prolonging the litigation and increasing the cost to plaintiff.

Under these circumstances, the trial court abused its discretion in awarding plaintiff only $3,500 in attorney fees despite its finding that all of the work done by plaintiff's lawyer was necessary to the action. The court's holding cannot be reconciled with its factual findings absent an implicit holding that an insured may be penalized for a reasonable exercise of judgment in rejecting a settlement offer. However, section 155 of the Code is intended to aid the insured and to discourage insurers from profiting by their superior financial positions while delaying in the payment of contractual obligations. (*Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 556-57; *Hall v. Svea Mutual Insurance Co.* (1986), 143 Ill. App. 3d 809, 812-13.) We sympathize with the trial judge's frustration over the massive effort expended in such a routine type of proceeding. We do not believe, however, that penalizing the insured for legal work that the court itself found necessary is in line with the purposes of section 155 of the Code.

We therefore conclude that the trial court's award of only $3,500 for plaintiff's attorney fees was an abuse of discretion and against the manifest weight of the evidence. As the trial court found that all of plaintiff's attorney's work was necessary and justified, we assess attorney fees in the amount prayed for, minus $25

for the 15 minutes that plaintiff's attorney acknowledged was spent with his expert witness and should not have been counted. We therefore hold plaintiff is entitled to a fee award of $15,208.35.

Plaintiff argues next that the trial court erred in awarding him only $3,000 for the value of his car rather than $3,645, which plaintiff asserts is the proper amount under the contract. We decline to pass on this assertion as we lack jurisdiction to do so.

Plaintiff's notice of cross-appeal states only that he appeals from the December 28, 1990, order allowing attorney fees of $3,500 and that by the cross-appeal he will ask this court to award fees in the amount prayed for in the petition, plus fees for defending this matter in the appellate court. The notice of cross-appeal makes no mention of the earlier order of September 13, 1990, which involved not fees but a verdict and damage award for breach of contract.

■ Supreme Court Rule 303(c)(2) (134 Ill. 2d R. 303(c)(2)) states that a notice of appeal or cross-appeal "shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." A notice of appeal gives a reviewing court jurisdiction over only the judgments or parts thereof specified in the notice of appeal. (*Sterne v. Forrest* (1986), 145 Ill. App. 3d 268, 279.) When an appeal is taken from a specified judgment only, or from a part of a specified judgment, the court of review acquires no jurisdiction to review other judgments or parts thereof not so specified or not fairly to be inferred from the notice as intended to be presented for review on appeal. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 434; *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1062.) Plaintiff's notice of cross-appeal is defective in this regard. As we lack jurisdiction to entertain plaintiff's challenge to the court's ruling on the contract damages issue, we consider it no further.

Plaintiff argues finally that, pursuant to section 155 of the Code, he is entitled to reasonable attorney fees for the defense of this appeal. Plaintiff maintains that because defendant's appeal is not well grounded in the law or the facts of this case it is therefore a continuation of defendant's unreasonable and vexatious refusal to pay plaintiff what it owes.

■ Under section 155 of the Code, vexatious and unreasonable delay may include the delay incurred by an insurer's appeal of a judgment. (*Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 557-58; *Meier v. Aetna Life & Casualty Standard Fire Insurance Co.* (1986), 149 Ill. App. 3d 932, 943-44.) Courts of review should enforce the Code's protection of insureds by restraining in-

surers from using the appeal process to punish the insured by lessening recovery through ill-founded appeals. (*Meier*, 149 Ill. App. 3d at 944.) We agree with plaintiff that defendant's appeal is vexatious and unreasonable. We therefore remand the cause to the trial court with directions to assess reasonable attorney fees for plaintiff's *defense* of this appeal. We wish to make it clear that section 155 extends only to the cost of defending the appeal and not to the cost that plaintiff himself incurred through the separate cross-appeal.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part; reversed in part and remanded.

GEIGER and McLAREN, JJ., concur.