TODD D. McGEE, Plaintiff-Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee (Premier Building Contractors, Inc., Intervening Plaintiff and Counterdefendant; Todd McGee *et al.*, Defendants and Counterplaintiffs).

Second District   No. 2—99—0901

Opinion filed July 31, 2000.

675

John R. Zemenak, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellant.

William G. Potratz, of Potratz & Hollander, P.C., of Chicago, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, Todd McGee, filed a complaint against defendant, State Farm Fire and Casualty Company, seeking an award pursuant to section 155 of the Illinois Insurance Code (the Insurance Code) (215 ILCS 5/155 (West 1998)). Defendant filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 1998)). The trial court granted defendant's motion, and plaintiff timely appeals. Intervening plaintiff, Premier Building Contractors, Inc. (Premier), is not a party to this appeal. We reverse and remand.

Because defendant argues that an examination of the common-law record provides evidence sufficient to defeat plaintiff's claim, we set forth the procedural history of this case in some detail. On January 15, 1996, plaintiff's home was damaged by a fire. Plaintiff reported the loss to defendant, his insurer. Plaintiff contracted with Premier, a public adjuster, to negotiate a settlement with defendant on his behalf. Plaintiff subsequently canceled his contract with Premier, rehired Premier, and canceled his contract with Premier a second time. Although plaintiff accepted payments for temporary housing and personal property loss, the parties were unable to reach an agreement regarding plaintiff's claim for damage to the dwelling.

On January 3, 1997, defendant sent a letter to plaintiff's attorney demanding an appraisal in accordance with the insurance contract. The letter also contained the following statement:

"Please be advised that the one year period in which to file suit has not been extended. The policy language pertaining to Suit Against Us is as follows:

8. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage. This one year period is extended by the number of days between the date that the proof of loss was filed and the date the claim is denied in whole or in part.

Therefore, [plaintiff] has until January 15, 1997, in which to file suit against us."

On January 15, 1997, plaintiff filed a three-count complaint for breach of contract against defendant, alleging that defendant owed him $183,960 for the cost of repair to the dwelling, $33,700 for loss of use of the dwelling, and $2,686 for damage to personal property. On April 28, 1997, defendant tendered to plaintiff a check in the amount of $96,750.69 payable to plaintiff, his mortgagee, and Premier. On May 8, 1997, plaintiff returned the check to defendant with a letter stating that he disputed Premier's interest in the insurance proceeds. The letter further stated that, although plaintiff believed he was entitled to a greater sum, he would be willing to accept a check payable only to him and his mortgagee as partial payment.

On June 2, 1997, Premier filed a petition to intervene, alleging that it was entitled to 10% of any recovery plaintiff might receive from defendant. On the same date, defendant filed a motion to dismiss and compel an appraisal, arguing that plaintiff's suit was premature because an appraisal was a condition precedent to filing a breach of contract action. Defendant also filed a motion for leave to file a complaint for interpleader alleging that defendant was indifferent to

the claims of plaintiff, his mortgagee, and Premier, that $96,750.69 represented the actual cash value of the damage to the dwelling, and that it was willing to tender that amount to the court for ultimate disbursement to the remaining parties. The trial court granted Premier's petition to intervene and continued the matter for hearing on defendant's motions.

On July, 7, 1997, the trial court denied defendant's motion to dismiss plaintiff's complaint, ordered the parties to submit to appraisal, stayed the contract action pending completion of the appraisal, and denied defendant's motion to file a complaint for interpleader.

On September 10, 1997, plaintiff presented a motion for the court-ordered selection of an umpire, alleging that the parties' appraisers had verbally agreed to the selection of an umpire as required by the appraisal provision of the insurance contract but that defendant's appraiser had refused to confirm the selection in writing. The trial court found that the issue might be moot and continued a hearing on the motion. The record reveals that on September 10, 1997, the parties' appraisers agreed in writing to the selection of an umpire.

On November 11, 1997, the appraisers entered an award settlement of $197,247, including $188,071 for loss of the dwelling, $2,949 for loss of contents, and $6,227 for additional living expenses. Plaintiff's appraiser dissented and stated the total loss was $225,163.07.

On January 7, 1998, the trial court vacated the stay of proceedings entered on July 7, 1997, pursuant to the agreement of the parties. On February 4, 1998, defendant filed a motion to dismiss plaintiff's complaint, alleging that it had paid the appraisal award in full with the exception of $25,000 that it held in response to Premier's claim pending direction from the court. Defendant argued that its liability under the insurance policy and any liability under the complaint had been discharged by payment.

The matter was continued several times while the court resolved various motions involving discovery violations and plaintiff's counterclaim against Premier.

On September 2, 1998, the trial court granted plaintiff's counsel leave to withdraw and continued the matter to October 8, 1998. On that date, substitute counsel filed an appearance on behalf of plaintiff. Following several continuances, the trial court granted plaintiff leave to file an amended complaint on December 1, 1998.

On December 15, 1998, plaintiff filed an amended complaint. The complaint included three counts sounding in breach of contract and added a fourth count alleging violation of section 155 of the Insurance Code and requesting attorney fees, costs, and statutory damages as

provided in section 155. Count IV alleged that defendant caused unreasonable delays in the handling and settling of the claim. Count IV contained over 50 paragraphs, and plaintiff alleged, *inter alia,* the following: (1) plaintiff requested a copy of the insurance policy covering his property the day after the fire, but defendant failed to provide a copy for approximately 10 months; (2) as a result, plaintiff was unaware of the applicable appraisal provisions of the policy; (3) plaintiff hired Premier to assist in his claim for damage to the dwelling on January 15, 1996, but terminated the contract on January 19 as the result of a disagreement regarding potential settlement; (4) plaintiff informed defendant that he intended to negotiate his claim directly; (5) defendant informed plaintiff that it would only negotiate a settlement of the dwelling damage with a licensed contractor and that, because Premier had begun evaluating plaintiff's claim, using another licensed contractor would seriously delay resolution of the claim; (6) plaintiff rehired Premier as a result of defendant's representations; (7) Premier estimated the cost of repair at $245,000, an amount in excess of the $189,300 policy limit, and furnished evidence of its estimate to defendant; (8) defendant offered to settle the claim for $110,000 based on its own investigation of the damage; (9) plaintiff rejected defendant's initial offer; (10) defendant subsequently raised its offer to $138,334, and plaintiff rejected the revised offer; (11) Premier then informed plaintiff that it had initially overestimated his loss and submitted a revised estimate of $204,000; (12) defendant subsequently offered to settle plaintiff's loss for $149,600; (13) Premier urged plaintiff to accept the offer but failed to inform him that the amount would be discounted to $96,750.69 for depreciation; (14) plaintiff refused the offer, but Premier accepted the offer on his behalf without authority; (15) when plaintiff learned of the purported settlement agreement, he terminated his contract with Premier and immediately informed defendant that the offer had been accepted without authority; (16) plaintiff hired a second contractor, who prepared an estimate of $232,000 for the dwelling loss; (17) defendant failed to respond to the revised estimate for more than 1½ months and then stated that it would not consider the revised estimate because Premier had accepted the earlier settlement offer on plaintiff's behalf; (18) plaintiff filed suit on January 15, 1997, because he believed that he was required to do so by the limitation provision of the insurance contract; (19) when the trial court ordered appraisal, defendant's appraiser delayed the matter further by refusing to agree to an umpire until the day before plaintiff's petition to appoint an umpire was to be heard by the trial court; (20) plaintiff's appraiser presented detailed documentation to support his claim of loss; (21) defendant's appraiser

presented no documentation or analysis and instead only challenged the figures submitted by plaintiff's appraiser and otherwise failed to participate in the appraisal process in good faith; (22) the appraisal award of $188,701 exceeded the applicable policy limits; and (23) defendant failed to pay plaintiff for his loss within 30 days of the appraisal award as required by the contract. Plaintiff concluded that these allegations demonstrated that defendant failed to pay despite clear evidence that the loss exceeded the policy limits, failed to promptly and thoroughly investigate plaintiff's loss, failed to utilize properly trained personnel to evaluate plaintiff's loss, and failed to negotiate and settle defendant's claims in good faith and in a prompt manner.

On April 28, 1999, plaintiff voluntarily dismissed the three breach of contract counts in his amended complaint. On June 7, 1999, defendant filed a motion to dismiss pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 1998)), alleging that it had discharged its contractual obligation through payment and that plaintiff could not maintain an independent cause of action under section 155 of the Insurance Code. Defendant further argued that its conduct could not have been unreasonable because it complied with the provisions of the contract and that any delay was caused when plaintiff filed an unnecessary complaint. On July 7, 1999, the trial court granted defendant's motion to dismiss. Plaintiff timely appeals.

■ As an initial matter, we note that plaintiff has attached as an appendix to his brief a transcript of the July 7, 1999, hearing on defendant's motion to dismiss. Similarly, defendant has included in the appendix to its brief a copy of an affidavit that defendant alleges was presented to the trial court at the hearing on its motion to dismiss but not included in the record. However, the record on appeal contains only the common-law record, and neither party has moved to supplement the record with the material contained in the appendices. Attachments to briefs that are not included in the record are not properly before this court and cannot be used to supplement the record. *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1069 (1994). Accordingly, we will not rely on the transcript, the affidavit, or any references to those materials contained in the parties' briefs. See *Barker*, 261 Ill. App. 3d at 1069.

■ An appellant has a duty to provide an adequate record for review by the appellate court, and any doubt arising from an insufficiency in the record will be resolved in the appellee's favor. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). However, if the errors of which the appellant complains can be resolved from the record as it stands, the failure to provide a proper report of proceedings will not defeat

the appellant's claims. See *Johnson v. Saenz*, 311 Ill. App. 3d 693, 696 (2000). Because of the nature of our review in this case, we find that the common-law record properly before us is sufficient to address plaintiff's contentions of error.

■ A section 2—619 motion to dismiss affords a defendant a means of obtaining a summary disposition when the plaintiff's claim can be defeated as a matter of law or on the basis of easily proved issues of fact. *Downey v. Wood Dale Park District*, 286 Ill. App. 3d 194, 200 (1997). The relevant provision of section 2—619 permits dismissal when the "claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1998). An "affirmative matter" is any defense other than a negation of the plaintiff's cause of action. *Bainter v. Village of Algonquin*, 285 Ill. App. 3d 745, 750 (1996). A section 2—619 motion to dismiss admits as true all well-pleaded facts in the complaint. *Downey*, 286 Ill. App. 3d at 200. If a cause of action is dismissed pursuant to a section 2—619 motion, the questions on appeal are (1) whether a genuine issue of material fact exists and (2) whether the defendant is entitled to a judgment as a matter of law. *Wright v. City of Danville*, 174 Ill. 2d 391, 398-99 (1996). Whether a dismissal pursuant to section 2—619 is proper is a matter of law, and we review the trial court's ruling *de novo*. *Downey*, 286 Ill. App. 3d at 200; *Bainter*, 285 Ill. App. 3d at 750.

■ Plaintiff's complaint alleges a cause of action based on section 155 of the Insurance Code (215 ILCS 5/155 (West 1998)). Section 155 provides:

> "(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $25,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (1)(a) through (1)(c) (West 1998).

Section 155 was enacted by the legislature "to provide a remedy to an insured who encounters unnecessary difficulties when an insurer with-

holds policy benefits." *Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 711 (1991); see also *Bedoya v. Illinois Founders Insurance Co.*, 293 Ill. App. 3d 668, 679 (1997). The attorney fees, costs, and limited penalty provisions of section 155 are an extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 521 (1996); see also *Valdovinos v. Gallant Insurance Co.*, 314 Ill. App. 3d 1018 (2000).

The key question in a section 155 claim is whether an insurer's conduct is vexatious and unreasonable. An insurance company does not violate the statute merely because it unsuccessfully litigates a dispute involving the scope of coverage or the magnitude of the loss. *Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587, 591 (1995). Moreover, section 155 does not create a duty to settle, and a delay in settling a claim does not violate the statute if the delay results from a *bona fide* dispute regarding coverage. *Valdovinos*, 314 Ill. App. 3d at 1021; *Bedoya*, 293 Ill. App. 3d at 679. However, an insurer's conduct may be vexatious and unreasonable if the insurer refuses to settle and proceeds to arbitration or trial without presenting a *bona fide* defense. See *Buais*, 275 Ill. App. 3d at 592-93; *Myrda v. Coronet Insurance Co.*, 221 Ill. App. 3d 482, 489 (1991).

■ Whether an insurer's conduct is vexatious and unreasonable is a matter committed to the trial court's discretion, and that determination will not be reversed on appeal absent an abuse of that discretion. *Valdovinos*, 314 Ill. App. 3d at 1020, citing *Marcheschi v. Illinois Farmers Insurance Co.*, 298 Ill. App. 3d 306, 311 (1998). A trial court must consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of her or his property. *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 752 (1997). To state a claim under section 155, an insured cannot merely allege that the insurer's conduct was vexatious and unreasonable, but she or he must include a modicum of factual support. *Bedoya*, 293 Ill. App. 3d at 679.

■ In the present case, plaintiff's complaint contains sufficient allegations of fact to support a claim under section 155. In the context of a section 2—619 motion, we must take the well-pleaded facts of plaintiff's complaint as true. *Downey*, 286 Ill. App. 3d at 200. From the factual allegations contained in the complaint, we can conclude, among other things, that (1) defendant refused to provide plaintiff with a copy of the insurance policy and misled him about its contents; (2) plaintiff relied on defendant's misstatements when he rehired Premier, and the plaintiff's subsequent dispute with Premier further

delayed the preparation of his claim; (3) defendant investigated plaintiff's claim inadequately and refused to negotiate in good faith despite evidence that the damages were well in excess of the policy limits; (4) defendant demanded that plaintiff submit the claim to appraisal but defendant's appraiser delayed the process by refusing to agree to an umpire and otherwise refused to participate in good faith in the appraisal process; and (5) defendant continued to delay payment even after completion of the appraisal process. We find that these allegations provide the factual support required to state a cause of action for unreasonable delay under section 155. See *Bedoya*, 293 Ill. App. 3d at 679.

Because we have determined that count IV of plaintiff's amended complaint was sufficient to state a cause of action, we must now examine the allegations contained in defendant's motion to dismiss to determine as a matter of law whether the undisputed facts are sufficient to defeat plaintiff's cause of action. See *Wright*, 174 Ill. 2d at 398-99. Defendant's arguments can be condensed into three general affirmative matters: (1) defendant's conduct was not unreasonable because it fulfilled its obligations under the policy by submitting the dispute to appraisal and paying plaintiff the appraisal award; (2) plaintiff is not entitled to an award under section 155 because a *bona fide* dispute existed regarding the amount of plaintiff's loss for damage to the dwelling; and (3) any delay in payment of the claim was a result of plaintiff's action and was not caused by defendant.

■ Defendant argues that plaintiff's cause of action under section 155 does not remain viable because defendant has discharged its contractual obligations through payment. In its motion to dismiss, defendant argued that no known cases in Illinois allow a claim under section 155 when an insurance company has complied with the requirements of the insurance policy. Defendant appears to have abandoned this argument on appeal, but we address it now because doing so better defines the factual issues pertinent to defendant's remaining arguments.

Payment alone does not defeat a claim for unreasonable delay under section 155. See *Calcagno v. Personalcare Health Management, Inc.*, 207 Ill. App. 3d 493, 505 (1991). In *Calcagno*, the insurer, a health maintenance organization (HMO), initially denied coverage for an apnea monitor for the plaintiffs' daughter. The plaintiffs' attorney contacted the insurer, and, after a hearing before the insurer's grievance committee, the insurer agreed to pay the claim. The plaintiffs subsequently sought their attorney fees and additional damages of $2,500 in small claims court. On appeal the reviewing court held that an insured may state a valid claim for unreasonable delay under sec-

tion 155, even when the disputed amount is paid in full prior to commencement of the litigation. *Calcagno*, 207 Ill. App. 3d at 505. The *Calcagno* court observed:

> "[P]rohibiting recovery of damages incurred as a result of unreasonable delay in the settlement of an insurance claim would permit dilatory insurers to delay payment of insurance benefits with impunity, so long as payment is made before a suit for recovery of the benefits is filed." *Calcagno*, 207 Ill. App. 3d at 505.

Similarly, an insurer cannot defeat a claim for unreasonable delay under section 155 simply by establishing that the procedural steps that resulted in the delay were authorized by the policy. See *Buais*, 275 Ill. App. 3d at 591-92. In *Buais*, the plaintiff's child was severely injured when struck by a vehicle driven by an uninsured motorist, and the plaintiff filed a claim with his own insurance company. The uninsured motorist claim was eventually submitted to arbitration, and the plaintiff was awarded the policy limit of $15,000. Plaintiff subsequently filed suit alleging a violation of section 155. The trial court dismissed the complaint, reasoning that the insurance company was under no obligation to settle the claim before submitting it to arbitration. The reviewing court observed that the plaintiff's complaint alleged, in effect, that the insurer

> "erected a stone wall between itself and its insured, simply waiting out the 30 months from the time of the accident until the arbitrator's decision was announced, all the time knowing it would have to pay out the full amount of the policy." *Buais*, 275 Ill. App. 3d at 590-91.

The reviewing court reversed and found that, although the insurer had no duty to settle a claim as opposed to submitting the dispute to arbitration, the complaint did state a cause of action under section 155 when the insurer "refused to evaluate, investigate, or even talk about a claim where there was no *bona fide* dispute about coverage." *Buais*, 275 Ill. App. 3d at 592. Similarly, we find that defendant's submission of the claim to appraisal and the subsequent payment, without more, are insufficient to defeat a claim under section 155.

Defendant argues that plaintiff is not entitled to an award under section 155 because the undisputed facts establish that any delay was the result of a *bona fide* dispute regarding the amount of the loss. We disagree. The undisputed facts establish that the parties did not agree on the amount of plaintiff's loss for damage to the dwelling and that the question was ultimately resolved through the appraisal process required by the insurance policy. However, defendant has failed to identify anything in the pleadings that establishes that the dispute was *bona fide*. "*Bona fide*" is defined as "[r]eal, actual, genuine, and not feigned." Black's Law Dictionary 177 (6th ed. 1990).

An insured's rejection of an unreasonable settlement offer does not by itself establish a *bona fide* dispute. See *Valdovinos*, 314 Ill. App. 3d at 1022-23. In *Valdovinos*, the insured's automobile was damaged, and, after hiring a professional appraiser, he submitted a claim for $11,091. The insurance company waited nearly two months before submitting an unexplained counteroffer of $6,814. On appeal, this court found that the insurer's failure to negotiate the claim was vexatious and unreasonable and awarded attorney fees under section 155. *Valdovinos*, 314 Ill. App. 3d at 1021, relying on *Myrda*, 221 Ill. App. 3d at 489.

Similarly, in *Myrda*, the reviewing court held that an insurer's assertion of a defense to coverage does not create a *bona fide* dispute regarding coverage absent a factual basis supporting the defense. In *Myrda*, the plaintiff filed a claim with his insurer alleging that his automobile had been stolen. The insurer denied coverage alleging that a polygraph examination revealed the defendant was lying when he indicated that his car had been stolen and was lying when he denied that he was trying to cheat the insurer. The matter ultimately proceeded to trial, but the insurer presented no evidence in support of its fraud defense. The trial court found that the insurer's failure to present evidence supporting its defense belied its assertion that the defense was *bona fide* and found that the insurer's conduct violated section 155. Plaintiff subsequently petitioned for approximately $15,000 in attorney fees. The trial court found that the fees charged by the plaintiff's counsel were necessary but awarded the plaintiff only $3,500 for attorney fees, holding that the plaintiff was partially responsible for the length and complexity of the litigation because he had rejected an earlier settlement offer. The reviewing court affirmed the trial court's award of attorney fees, holding that the insurer's failure to present a defense belied its assertion that it had a *bona fide* defense to the claim. *Myrda*, 221 Ill. App. 3d at 489. However, the reviewing court found that the plaintiff's rejection of the settlement offer was reasonable in light of the likelihood of recovery and the amount of attorney fees incurred at the time of the offer and reversed the trial court's fee award. *Myrda*, 221 Ill. App. 3d at 491. The reviewing court held that awarding the plaintiff less than the full amount of reasonable and necessary attorney fees would penalize him for a "reasonable exercise of judgment in rejecting a settlement offer." *Myrda*, 221 Ill. App. 3d at 491.

The undisputed facts of this case establish that plaintiff submitted three estimates for repair each of which exceeded the applicable policy limit, that the final appraisal award exceeded the policy limit for damage to the dwelling, and that defendant attempted to settle the claim

for approximately one half of the policy limit. We observe that defendant has abandoned its claim that plaintiff was bound by Premier's purported acceptance of an earlier settlement offer. Absent from the record before us, however, is undisputed evidence that this dispute was *bona fide* or, in other words, genuine and not feigned. Plaintiff alleged that the individuals defendant assigned to evaluate the loss were untrained and unqualified to make that determination. Plaintiff further alleged that during the appraisal process defendant's appraiser presented no independent evaluation of the loss. Therefore, we conclude that, in light of the appraisal award, plaintiff's rejection of a settlement offer well below the policy limit did not by itself create a *bona fide* dispute regarding the amount of the loss.

We emphasize that we have not concluded that defendant's settlement offer was *per se* unreasonable and vexatious simply because it was less than the ultimate appraisal award. At trial, defendant may be able to present evidence establishing that its evaluation of plaintiff's loss had a rational basis in fact and that its settlement offer was reasonable. However, defendant has not presented evidence to support such a conclusion in its motion to dismiss. Furthermore, even if defendant had presented such evidence, the issue of whether its settlement offer was reasonable would remain a disputed issue of fact that would preclude dismissal pursuant to section 2—619. See *Wright*, 174 Ill. 2d at 398-99.

Defendant also argues that any delay in settling the claim was attributable to plaintiff and constitutes an affirmative matter that defeats plaintiff's section 155 claim. Defendant further argues that we may, and that the trial court did, take judicial notice of the contents of the common-law record and that the procedural history of this case reveals undisputable facts that support its conclusion that any delay in settlement was attributable to plaintiff's conduct. We disagree.

First, as we observed above, plaintiff alleged that defendant's failure to negotiate a settlement prior to submitting the claim to appraisal was unreasonable and nothing contained in the common-law record is sufficient to establish that defendant's conduct was not, as a matter of law, vexatious or unreasonable. Even if the record on appeal revealed that defendant's actions after suit was filed were reasonable, plaintiff could still be entitled to an award under section 155 as a remedy for vexatious and unreasonable conduct before suit was filed. See *Calcagno*, 207 Ill. App. 3d at 505 (allowing an award under section 155 even though the claim was paid in full prior to filing suit).

Second, our examination of the common-law record does not reveal that plaintiff was solely responsible for the delay in settling this case after suit was filed. Defendant argues that plaintiff filed his breach of

contract action prematurely and thereby delayed the submission of the dispute to appraisal. Although defendant sent a letter to plaintiff demanding appraisal of the disputed claims, that same letter contained unequivocal language indicating that the limitations period had not been extended and that defendant intended to assert the limitations clause of the policy as a defense if plaintiff did not file suit by January 15, 1997. Defendant subsequently reversed its position and argued that the dispute between the parties had extended the limitations period. Defendant has not persuaded us that the delays created by its own contradictory positions regarding the limitations period should be attributed to plaintiff. Moreover, defendant waited almost six months after plaintiff filed suit before filing its motion to compel appraisal. Even if plaintiff acted unreasonably when he filed suit, defendant has not identified evidence explaining why it did not promptly move to compel appraisal or why its delay should be attributed to plaintiff.

Furthermore, plaintiff's complaint alleged that defendant's appraiser delayed the process by refusing to agree to an umpire, and the record reveals that the appraisers agreed to an umpire on the same day that plaintiff filed a motion to appoint an umpire. An appraiser's failure to agree to the selection of an umpire may constitute unreasonable and vexatious conduct and may be attributed to an insurance company when the appraiser acts as the insurer's agent. See *Green v. International Insurance Co.*, 238 Ill. App. 3d 929, 935-36 (1992). Whether defendant's appraiser intentionally delayed the appraisal process and whether that delay should be attributed to defendant is a disputed issue of fact that precludes dismissal pursuant to section 2—619. See *Wright*, 174 Ill. 2d 398-99.

In conclusion, we find that defendant's section 2—619 motion left unresolved numerous issues of fact including, but not limited to, whether defendant's employees were qualified to evaluate plaintiff's dwelling-loss claim, whether defendant's counteroffer was reasonable in light of the repair estimates submitted by plaintiff and its own evaluation of plaintiff's loss, and whether the delays in settling plaintiff's claim can be attributed to false and misleading statements made by defendant, including the assertion that defendant would only negotiate with a licensed contractor and defendant's letter indicating that the limitations period had not been extended. Moreover, those facts that are undisputed, including the contents of the common-law record, are insufficient to defeat plaintiff's claim as a matter of law. Accordingly, we find that the trial court erred when it granted defendant's motion to dismiss pursuant to section 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 1998)).

For the foregoing reasons, we reverse the judgment of the circuit

court of Du Page County and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

INGLIS and GEIGER, JJ., concur.