NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 5 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GREAT-WEST LIFE & ANNUITY
INSURANCE COMPANY,

Plaintiff-counter-
defendant-Appellee,

v.

MICHAEL HARRINGTON,

Defendant-counter-claimant-
Appellant.

No.    18-55878

D.C. No.
2:17-cv-04973-R-AFM

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted December 10, 2019
Pasadena, California

Before:  O'SCANNLAIN, PAEZ, and OWENS, Circuit Judges.
Dissent by Judge O'SCANNLAIN

Michael Harrington raises three issues on appeal.  First, he appeals the

district court's grant of summary judgment in favor of Great-West Life & Annuity

Insurance Company's ("Great-West's") rescission claim.  Second, he appeals the

---

*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

dismissal of his counterclaim for statutory penalties under Illinois law. Third, he argues that he was entitled to a jury trial on his breach of contract counterclaim. We agree the district court erred in granting summary judgment on Great-West's rescission claim. We also agree that Harrington should have been entitled to a jury trial on his breach of contract counterclaim. We affirm, however, the district court's dismissal of his claim for statutory penalties under Illinois law. Because the parties are familiar with the facts, we need not recount them here.

## 1. Rescission Claim

The record does not indisputably show that Harrington misrepresented himself on his applications for disability insurance when he did not disclose his visits to a chiropractor.[1] Great-West points mainly to two areas in which it asserts Harrington lied—the original insurance applications and follow-up musculoskeletal questionnaires. We discuss each in turn.

*Insurance Applications*. Harrington did not indisputably misrepresent himself by answering "no" to whether, in the last five years, he had a "checkup, consultation, illness, surgery, or disease not mentioned." (Question 4(d)). Reading this question "in its factual context," one could reasonably believe the question

---

[1] Under Illinois law, an insurance company may rescind insurance coverage based on a misrepresentation in an insurance application that is "made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." 215 Ill. Comp. Stat. 5/154. The parties do not dispute that Illinois law applies here.

sought information only about one's medical history, rather than chiropractic treatment. *See Cohen v. Washington Nat'l Ins. Co.*, 529 N.E.2d 1065, 1066 (Ill. App. Ct. 1988) (citing *Putzbach v. Allstate Ins. Co.*, 494 N.E.2d 192 (Ill. App. Ct. 1986)). First, the questionnaire was labeled a "*Medical* Questionnaire." (Emphasis added). Second, the questionnaire asked about Harrington's current "physician," but did not seek information about his chiropractor or any other practitioner. Last, other parts of the relevant question asked about distinctly medical issues, such as whether Harrington had been a "patient in a *hospital*, *clinic*, or other *medical facility*," or had an "EKG, X-ray, blood test, or other diagnostic test." (Questions 4(b)–(c)) (emphases added). Thus, viewing the question in its overall context, a reasonable factfinder could conclude that the question asked about medical checkups and consultations, rather than chiropractic ones. And, because chiropractors are not authorized to practice medicine in California, CAL. BUS. & PROF. CODE § 1000-15; 59 Cal. Op. Att'y Gen. 420 (1976) ("A chiropractor cannot, by virtue of his chiropractic license, claim to be anything other than a chiropractor."), a factfinder could reasonably conclude that he need not disclose information about visits to his chiropractor.

Great-West also fails to show that Harrington indisputably lied when he said he did not, in the last ten years, have a "backache, rheumatic fever, rheumatism, arthritis, paralysis, or disorder of the muscles or bones, including joints and

spine[.]" (Question 2(g)). Great-West does not specify which aspect of the question required a disclosure or what the disclosure should have been. In any event, a reasonable factfinder could conclude that Harrington did not know, based on the facts known at the time, he suffered from any of these ailments.[2]

*Follow-Up Musculoskeletal Questionnaires.* Great-West has not demonstrated that it is entitled to summary judgment based on Harrington's answers to the follow-up musculoskeletal questionnaires. The questionnaires were preceded by the following header: "***Regarding your history of chronic neck strain noted in December 2011, with paresthesia and bilateral hand numbness.***" (Emphasis in original). Based on the text of this statement, a reasonable factfinder could conclude that the questionnaire was asking about chronic neck strain accompanied by symptoms of paresthesia and bilateral hand numbness, rather than information about paresthesia and hand numbness as standalone symptoms that were independent of a chronic neck condition. That interpretation is reasonable

---

[2] For similar reasons, Great-West fails to show Harrington indisputably lied in his responses to "part two" of the insurance applications. Those questions asked whether Harrington had "been treated for or had any known indication of . . . [n]euritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, or joints"; was then "under observation/receiving treatment"; and whether in the last five years he "[h]ad a checkup, consultation, illness, injury, surgery." (Questions 2(h), 3(a), 5(a)). A reasonable factfinder could conclude that these questions sought information only about medical treatment Harrington received, not chiropractic treatment. Consistent with this narrow interpretation, Harrington disclosed a medical diagnosis he received for sleep apnea.

4

considering that later questions exclusively referenced a "neck problem" and "neck disorder," without ever specifying bilateral hand numbness or paresthesia.[3]  Thus, Harrington's responses to the questionnaires cannot indisputably be characterized as misrepresentations.

Because we reverse the district court's conclusion that Great-West was entitled to summary judgment, we need not decide whether Harrington's alleged misrepresentations were material.

## 2. Statutory Penalties

We affirm the district court's grant of summary judgment on Harrington's claim for statutory penalties under 215 Ill. Comp. Stat. 5/155.  Harrington submitted no evidence to show that Great-West's acts or delay in settling the claim were vexatious or unreasonable.  *See* 215 Ill. Comp. Stat. 5/155; *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1087 (7th Cir. 2007) (citing *McGee v. State Farm Fire & Cas. Co.*, 734 N.E.2d 144, 153 (Ill. App. Ct. 2000)).

## 3. Right to a Jury Trial

We agree with Harrington's contention that the district court erred in

---

[3] For example, any questions that identified the disorder referred exclusively to the "neck," such as whether Harrington's "neck problem" caused him to lose any time from work; whether his "neck problem" interfered with his normal activities; or whether "his neck disorder" required him to undergo surgery.  (Questions 7, 8, 9).  By contrast, no other questions expressly referenced paresthesia or bilateral hand numbness.

denying him a right to a jury trial over his breach of contract claim. Although litigants are not normally entitled to a jury trial over equitable claims, *Pernell v. Southall Realty*, 416 U.S. 363, 375 (1974), a trial judge must "preserve [the right to a] jury trial" when legal claims share common factual issues with equitable claims in the same action, *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)). Although Great-West's rescission claim is equitable, Harrington's claim for damages for breach of contract is legal in nature and therefore triable to a jury. *See* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2316 (3d ed. 2004). We see no "imperative circumstances" justifying the court to determine Great-West's rescission claim before Harrington's breach of contract claim is presented to a jury. *See Dollar Sys.*, 890 F.2d at 170; *see also Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*, 179 F. Supp. 3d 958, 961 (N.D. Cal. 2016).

**REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings. The parties shall bear their own costs on appeal.**



*Great-West Life & Annuity Ins. Co. v. Harrington,* No. 18-55878

O'SCANNLAIN, J., dissenting:

I respectfully dissent from Parts 1 and 3 of the court's disposition, which reverses the district court's grant of summary judgment and orders a jury trial. In my view, there is no genuine dispute that Harrington made material misrepresentations in his disability insurance application, and I would affirm the judgment of the district court in its entirety.

## I

The majority ignores that it is undisputed that Harrington failed to disclose his neck pain and a paresthesia *medical* diagnosis in his initial application to Great-West. In his initial application, when asked if, in the past ten years he had "backache…disorder of the muscles or bones, including joint and spine" Harrington responded "no." Likewise, when asked if, in the past five years, he "had a checkup, consultation, illness, surgery, injury, or disease not mentioned in [previous questions]," he responded "no." Yet, the record reveals that on December 9, 2011, he visited Dr. Kristin Pena, a physician, who diagnosed him with the medical condition of "paresthesia—related to chronic neck strain." Indeed, Harrington does not even dispute that this information was not disclosed on the initial application. Such a failure to disclose constitutes a misrepresentation.

1

*Essex Ins. Co. v. Galilee Medical Center SC,* 988 F. Supp. 2d 866, 871 (N.D. Ill. 2013).

And Harrington made further misrepresentations in failing to disclose his chiropractic treatments. It is undisputed that Harrington was treated by Dr. Michael Peck, a chiropractor, four times, twice for bilateral hand/finger numbness, and the other times were for back and neck problems. It is also undisputed that Harrington never disclosed any of these visits either in the initial application or in the follow-up questionnaire.

Harrington admitted in his deposition that a "consultation" includes a visit to a chiropractor. Yet, he still answered "no" on the initial application. The majority argues that it is not certain what "consultation" means, especially since the application was a "medical questionnaire," and therefore it could be disputed whether or not Harrington engaged in a misrepresentation by failing to disclose his visits to a chiropractor. Yet neither party disputes that a consultation would include a visit to a chiropractor, and the court should not read in ambiguity where none exists. *See Cohen v. Washington Nat'l Ins. Co.*, 529 N.E.2d 1065, 1066-67 (Ill. App. Ct. 1986).

## II

After Great-West received the Dr. Pena medical records, it sent Harrington a "Musculoskeletal Questionnaire" to obtain more information. Instead of providing

2

the requested information, Harrington simply stated, "This is an inaccurate medical record and does not exist" and failed to fill out the rest of the questionnaire. Still attempting to obtain information, Great-West sent a second Musculoskeletal Questionnaire to which Harrington responded "This was a one time occurrence do [sic] to a poor nights [sic] sleep. The condition resolved the next day so no follow was indicated." Even when given the opportunity to correct his prior misrepresentation, Harrington still continued to provide inaccurate information. Particularly troubling, he even attempted to get Dr. Pena's office to change the medical record so that there would be no reference to a paresthesia diagnosis.

The majority asserts that the questions in the Musculoskeletal Questionnaire were ambiguous because it asked principally about "chronic neck strain" and only secondarily about "paresthesia." Yet, even though Harrington was sent the same questionnaire twice, he made no effort to clarify its language. Furthermore, the fact that he responded it was a "one time occurrence" and made efforts to have his medical records changed indicates that he knew of the significance of Dr. Pena's diagnosis. Harrington's failure to disclose Dr. Pena's paresthesia and neck strain diagnosis and corresponding treatment constituted a false assertion that indeed affected the risk taken by the insurer. *Essex Ins. Co.,* 988 F. Supp. 2d at 871.

Finally, it is undisputed that Harrington did not disclose his treatments by Dr. Peck on the Musculoskeletal Questionnaire. One question specifically asked

for the contact information of any treating chiropractors, but Harrington did not provide Dr. Peck's contact information even though he had been treated for bilateral hand/finger numbness (paresthesia) and neck pain, the very conditions that were the subject of the questionnaire. It appears that Harrington did indeed understand the information that the questionnaire sought because he also went back to Dr. Peck and asked him to change his records to indicate that Harrington never had hand/finger numbness or neck pain. Harrington's failure to disclose chiropractic treatments constituted a misrepresentation that affected the risk taken by the insurer. *Essex Ins. Co.,* 988 F. Supp. 2d at 871.

### III

Such misrepresentations were indeed material because, as Great-West underwriter Ami Hanson testified, had Great-West known Harrington's complete medical and treatment history, it would not have issued the coverage that it did, and the testimony of an underwriter is sufficient to establish materiality under Illinois law. *Id.* at 873. Great-West was entitled to rescission as a matter of law.[1]

---

[1] Because I would hold that Great-West was entitled to rescission, it follows that Harrington's statutory breach of contract claim would fail as a matter of law; for that reason, I concur in Part 2 of the majority's disposition. *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis,* 821 N.E.2d 706, 715 (Ill. App. 2004).

4

*Essex Ins. Co.,* 988 F. Supp. 2d at 871. Summary judgment was properly granted;

I would affirm the decision of the district court.[2]

---

[2] Since I would hold summary judgment was proper, I would not reach the jury trial issue.