2020 IL App (1st) 191128-U

THIRD DIVISION
May 13, 2020

No. 1-19-1128

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| FELICIA SYLVERTOOTH, TAMMY DABNEY, and LAVERGNE MCGEE, | ) ) Appeal from ) the Circuit Court |
| Plaintiffs-Appellants, | ) of Cook County ) |
| v. | ) 2015-CH-018872 ) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) Honorable ) Daniel P. Duffy, ) Judge Presiding |
| Defendant-Appellee. | ) |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Ellis and Justice Howse concurred in the judgment.

ORDER

¶ 1    *Held*: Summary judgment for automobile insurer affirmed where car owner and passengers alleged breach of contract and vexatious and unreasonable delay in settling claims, but record established a *bona fide* coverage dispute followed by the insurer's prompt payment of arbitration awards.

¶ 2    Driver Felicia Sylvertooth and her passengers Tammy Dabney and Laverne McGee sued for $5000 each in medical expenses from Sylvertooth's automobile liability insurer, State Farm Mutual Automobile Insurance Company (State Farm), as well as $50,000 damages pursuant to section 155 of the Illinois Insurance Code, based on allegations that the insurer unreasonably and vexatiously delayed their claims for the insurance policy's "medical payments coverage" after a

hit-and-run motor vehicle collision. 215 ILCS 5/155 (West 2014). On appeal, the three claimants contend the trial court abused its discretion in denying their motion to compel discovery into the insurer's handling of the coverage claim after this suit was filed, and further erred by finding that a *bona fide dispute* regarding medical payments coverage entitled State Farm to summary judgment.

¶ 3     We have jurisdiction over the appeal from a final judgment of the circuit court pursuant to Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017).

¶ 4     When the collision at issue occurred, Sylvertooth was insured by a State Farm policy that included medical payments coverage up to $5000 per individual. The Medical Payments Coverage section of the contract defined key terms:

> "**Medical Expenses** mean **reasonable expenses** for **medical services**.
>
> **Medical Services** mean treatments, procedures, products and other services that are:
>
> 1. Necessary to achieve maximum medical improvement for the **bodily injury**;
>
> *          *          *
>
> **Reasonable Expenses** mean the lowest one of the following charges:
>
> 1. The usual and customary fee charged by a majority of healthcare providers who provide similar **medical services** in the geographical area in which the charges were incurred[.]"

¶ 5     Pursuant to the policy, in evaluating whether bills qualified as Medical Expenses, State Farm Auto had the contractual right to:

> "1. Obtain and use:
>
> a. utilization reviews;

b. peer reviews; and

c. medical bill reviews to determine if the incurred charges are *medical expenses*."

¶ 6    Under the section of the policy captioned "Insured's Duties" with respect to Medical Payments Coverage and Uninsured Motor Vehicle Coverage, a "person making [a] claim" was required to:

"(3) provide written authorization for *us* [(State Farm)]to obtain:

a. medical bills;

b. medical records;

c. wages, salary, and employment information; and

d. any other information *we* [(State Farm)] deem necessary to substantiate the

claim."

¶ 7    The policy also indicated, "If there is a disagreement as to whether incurred charges qualify as *medical expenses*, then the disagreement will be resolved through arbitration" and that the arbitrator's decision would be binding.

¶ 8    The collision occurred in Chicago at about 4:00 p.m. on May 12, 2015, when 58-year-old Sylvertooth was stopped in her 2014 Chevrolet Impala on westbound 79th Street at Woodlawn Avenue. Another vehicle rear-ended the Impala. After the driver got out of the vehicle and spoke with Sylvertooth, he returned to his car and left the scene. Sylvertooth had been wearing a seatbelt and the Impala's airbags did not deploy. She drove to a police station to report the incident. The police officer's report stated there were no injuries. She then drove herself to a hospital and complained that she was experiencing upper left and lower back pain that had slowly developed after the collision. Sylvertooth had a history of low back and buttock pain which was being treated

with a spinal cord stimulator and mild narcotic pain medications. The emergency room physician diagnosed muscle strain and cramps, prescribed pain medication, and asked Sylvertooth to see her primary care physician in 3-to-5 days.

¶ 9 The next day, Sylvertooth reported the collision to her insurer. When a State Farm claims representative followed up with a phone call on June 2, 2015, Sylvertooth said she had hired an attorney to handle her claim. Attorney Joseph Younes called the insurer later that day, confirmed that he had been hired to represent Sylvertooth and said he was also representing Dabney and McGee. No passengers, however, were mentioned in the police officer's initial report. Sylvertooth would subsequently testify at a deposition that after going to the police station, she drove back home so one of her two passengers could retrieve her own vehicle before Sylvertooth drove herself to the emergency room. Younes said that he would be tendering his clients' medical bills and that the three were willing to "submit to a [recorded] statement" but suggested that this wait until after they had completed treatment. He did not yet have their birth dates or social security numbers.

¶ 10 The claim file was reassigned on June 5, 2015 to claims representative Kellie Klingaman of the insurer's Special Investigation Unit or SIU. In a deposition taken during this litigation, Klingaman's supervisor, David Johnson, said that claims are reassigned for resolution by the SIU when there are indicators of potential fraud pursuant to the National Insurance Crime Bureau or NICB.

¶ 11 On July 8, 2015, Klingaman sent forms to Younes so that the insurer was authorized to obtain medical records and other information it might need to confirm the validity of the claims. Younes did not return the forms.

¶ 12 On September 23, 2015, Klingaman advised Younes that the insurer was still waiting to

take sworn, recorded statements from his clients.

¶ 13    A month later, on Thursday, October 22, 2015, the attorney faxed a supplemental police report to Klingaman dated September 15, 2015, indicating Dabney and McGee had been in Sylvertooth's car when the vehicle was struck. Younes also wrote that his clients were demanding arbitration of their rights to the policy's uninsured motorist (UM) coverage, which was in addition to the policy's medical payments coverage. He also said: "Finally, in the event you fail to confirm, by the close of business [tomorrow] on [Friday] October 23, 2015, that medical payments for Ms. Tammy Dabney and Ms. Laverne McGee will be authorized, I will proceed to file an action for bad faith against State Farm on [Monday] October 26, 2015." Klingaman called Younes the same day and told him that the claims had not been denied, but State Farm did not have basic information that it needed to evaluate the claims. Younes said he would send some medical records and bills.

¶ 14    On October 26, November 4, and December 10, 2015, Klingaman sent letters to Younes asking for information about the claimed injuries and treatment and the completed forms authorizing the release of information. Klingaman noted that the insurer "may need additional information once the documents are reviewed."

¶ 15    On December 15, 2015, Younes faxed State Farm several hundred pages of medical records and bills for the three claimants. The bills were not itemized and Younes's cover letter did not summarize the injuries. The medical expenses submitted totaled $3503 for McGee, $6510 for Dabney, and $233,542 for Sylvertooth.

¶ 16    Two weeks later, on December 31, 2015, Younes filed a single count "declaratory judgment" action on behalf of his three clients, alleging that the insurer was in breach of contract for failing to pay the $5000 limit of the policy's medical payments coverage. The plaintiffs sought

the policy limits and statutory penalties for unreasonable and vexatious delay in resolution of their claims. *See* 215 ILCS 5/155 (West 2014).

¶ 17    State Farm responded with a motion to dismiss the portion of the complaint which asked the circuit court to declare that the two passengers were "named insureds" in Sylvertooth's policy. The State Farm policy stated that the "named insured or named insureds [were] shown on the Declarations Page" of the policy, however, neither McGee nor Dabney's names were written in State Farm's contract with Sylvertooth. On March 16, 2016, the circuit court granted the motion. Because the suit was not appropriately characterized as a declaratory judgment claim, it was reassigned to a different division of the circuit court.

¶ 18    On August 29, 2016, the circuit court ordered the closure of discovery on November 1, 2016. By September 16, 2016, State Farm had used the discovery process to obtain sworn statements from the three women and various medical records and bills, and the insurer submitted all of this information to Dr. Frank Clark, M.D., Ph.D., for an independent medical review of Sylvertooth's claim. When it received a few additional medical records in October and November 2016, State Farm added them to the information that was under Dr. Clark's consideration.

¶ 19    The plaintiffs' discovery efforts included written interrogatories, one of which asked State Farm to "[d]escribe each file that was opened, created, or maintained *** relating in any way to the medical payment claims, including the complete name or title of said file(s)." The insurer responded on September 8, 2016, that it did not maintain a physical file with most claims and that it was producing everything in its electronic claim file that was not "protected by the attorney[-]client privilege and/or [was not] work product." In other words, State Farm produced what it recorded prior to the lawsuit. State Farm also said, "To the extent that this request seeks

production of information other than the 'Claim File' as described above, State Farm objects to this request as overbroad, vague, ambiguous, burdensome, and as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." One of the appellate issues is whether State Farm should have produced more of its records, but the plaintiffs' description of what occurred in the circuit court is unclear, as it indicates only that the insurer made objections to the interrogatory and omits that the insurer produced what it did not consider to be protected.

¶ 20    In addition to requesting reimbursement under Sylvertooth's medical payments coverage, the claimants had requested payment through her (UM) coverage and demanded arbitration of the UM coverage. According to State Farm's appellate brief, Dabney and McGee's claims for UM coverage were referred to binding arbitration to take place on September 20, 2016, but on that day they requested a continuance and the matter was delayed to December 14, 2016. The record indicates that during the arbitration in December, McGee presented medical bills totaling $3503 and Dabney presented medical bills totaling $6510. The arbitrator awarded McGee $7006, half of which was for medical expenses and half of which was for pain and suffering, and awarded Dabney $9923, with the same half-and-half split between medical expenses and pain and suffering. State Farm paid the awards in full on December 21, 2016. Since the UM claims and medical payments coverage claims concerned the same medical bills and were governed by the same arbitration clause, State Farm's payments to Dabney and McGee for the UM coverage resolved both types of claims.

¶ 21    Sylvertooth deposed State Farm's claims personnel Klingaman and Johnson on December 28, 2016. At these depositions, State Farm's attorney objected to questions about the claims

handling process after the lawsuit was on file, based on relevancy and attorney-client privilege.

¶ 22    In a six-page letter to State Farm dated December 31, 2016, Dr. Clark rendered his opinion of Sylvertooth's injury and the necessity and reasonableness of the medical treatment she attributed to the collision. Her medical records revealed a "long and involved history of low back and abdominal pain." Dr. Clark read records from the police, Sylvertooth's written discovery responses, her deposition testimony in July 2016, records from the Illinois Workers' Compensation Commission, and records from four of her healthcare providers. Dr. Clark summarized that the relatively minor vehicle collision caused a lumbar strain that exacerbated Sylvertooth's preexisting pain condition and that the strain had resolved with time and physical therapy. Dr. Clark explained:

"Sylvertooth underwent a small bowel resection in 1995 and has had intermittent chronic abdominal pain since that time. She has been intermittently admitted to the hospital for exacerbations of chronic abdominal pain, most recently in August of 2015. In addition, Dr Sandeep Amin has been treating Ms Sylvertooth for chronic low back pain since at least 2002. On January 17th, 2002, Dr Amin described a 'longstanding history of left sided low back and buttock pain' very similar to the pain she described following the motor vehicle accident of May 12th, 2015. Dr Amin treated Ms Sylvertooth with many pain procedures in 2002 and 2004 and then she went on and had spinal fusion surgery by Dr Boone Brackett on September 22nd, 2005. She continued to have pain in her left low back and buttock despite the fusion and underwent a number of pain procedures by Dr Amin in 2006 and 2007, culminating in the placement of a spinal cord stimulator in the fall of 2007. The office notes from Dr Amin appear to be incomplete as I have no notes from 2007 until April of 2014. Nevertheless, the last two office notes from Dr Amin prior to the May 2015

motor vehicle accident are from April 21st, 2014 and November 17th, 2014 and demonstrate 'ongoing low back pain/left buttock pain' of 4 out of 10. This baseline pain level is the identical pain score and pain in the same location that she returned to following her physical therapy of June and July of 2015, following the accident."

¶ 23 Dr. Clark's letter indicated which medical evaluations and treatment seemed to him to be reasonable and necessary after the motor vehicle accident.

¶ 24 Upon receiving Dr. Clark's report, State Farm paid Sylvertooth's $5000 medical payments coverage claim on January 11, 2017.

¶ 25 On an unspecified date, Sylvertooth's UM claim proceeded to arbitration and of the $233,529 in medical bills that were submitted, the arbitrator awarded Sylvertooth only $47,685.

¶ 26 After discovery closed in November 2016, the matter was set for a status hearing on February 8, 2017 before a different judge of the circuit court. According to State Farm's appellate brief, when the matter was called, State Farm presented a motion for summary judgment in light of its payments resolving the three claims for medical payments coverage. State Farm also states that the claimants moved for substitution of judge as a matter of right, but, because the claimants did not prepare an order to accomplish the change, the case subsequently "drop[ped] off the court call" and the circuit court disposed of the case on January 5, 2018. The claimants do not dispute State Farm's account, other than to state that the circuit court erroneously disposed of the case and that the claimants "[had to take] corrective measures." State Farm indicates that the claimants filed a "Motion to Correct the Docket" on March 16, 2018, and when the motion was called on March 27, 2018, the circuit court said it had no authority to grant or deny the motion because of the order disposing of the case. State Farm further relates that the claimants filed a motion to reinstate the

case and that the motion was granted on July 26, 2018.

¶ 27    The record shows that on September 4, 2018, the claimants filed a motion entitled "Motion to Compel [Discovery] and to Stay Defendant's Motion for Partial Summary Judgment and to Overrule Defendant's Objections to Discovery." Although discovery had been closed for nearly two years, the claimants now sought a ruling on State Farm's objections to the interrogatory into the insurer's claim file and an order requiring Klingaman and Johnson to return for depositions about the insurer's claims handling practices "after the filing of this [section 155] action." The claimants contended that the insurer's motion for summary judgment should be stayed because material, pertinent facts about the insurer's conduct "after the filing of this [section 155] action" remained in the insurer's exclusive knowledge. State Farm amended its summary judgment motion on September 19, 2018 and the claimants amended their discovery motion on October 9, 2018. On January 3, 2019, the circuit court entered an order indicating it was denying the claimants' motion regarding discovery, after a hearing and being "fully advised in the premises." We cannot summarize the court's reason or reasons for denying the claimants' requests for additional discovery, as the handwritten order does not state the court's basis and we did not receive a transcript of the proceedings. Later that month, on January 31, 2019, the claimants filed a motion for summary judgment, in opposition to State Farm's pending amended motion for summary judgment. On April 17, 2019, the claimants filed a motion asking for reconsideration of the motion to compel discovery. On May 1, 2019, the circuit court resolved the motion to reconsider discovery and the crossmotions for summary judgment in favor of State Farm. The claimants then took this appeal.

¶ 28    In the appellate court, the claimants argue that their motion to compel discovery should

have been granted because the manner in which the insurer handled the three medical payments coverage claims–after the insurer had been sued for "bad faith" claims handling–was material and relevant to determining whether the insurer acted in bad faith prior to the suit. They contend that in an action based on section 155 of the Insurance Code (215 ICLS 5/155 (West 2014)), a court must consider "the totality of the circumstances" surrounding the insurer's settlement of the claim. *Statewide Insurance Co. v. Houston General Insurance Co.*, 397 Ill. App. 3d 410, 426, 920 N.E.2d 611, 624 (2009) (court should consider the totality of the circumstances when deciding whether an insurer's conduct is vexatious and unreasonable). They contend that State Farm's objections to the written interrogatories and deposition questions were "stock objections," "frivolous," caused the claimants to abruptly terminate the depositions, and meant that the claimants "were not afforded a reasonable opportunity to conduct full or even meaningful discovery prior to [State Farm's] filing of its Motion for Summary Judgment." They contend that the circuit court's ruling on the insurer's motion for summary judgment without benefit of further discovery "was improper and premature."

¶ 29    State Farm responds that the order denying additional discovery does not specify the basis, but any one of the numerous reasons disclosed by the record would enable us to affirm the circuit court's ruling. State Farm argues these reasons include: (1) the discovery motion was filed nearly two years after discovery closed, and included a period when the claimants did nothing and "even let their case drop off the court call for nearly a year;" (2) the claimants' attorney did not comply with Rule 201(k)'s requirement that he make a "personal consultation and reasonable attempts to resolve differences [with opposing counsel]" regarding discovery before filing the motion (Ill. S. Ct. Rule 201(k) (eff. Jan. 1, 2013); see *Williams v. A. E. Staley Manufacturing Co.*, 83 Ill. 2d 559, 563, 416 N.E.2d 252, 254 (1981) (the Illinois rules "contemplate that discovery will generally

- 11 -

proceed without judicial intervention and that the great majority of discovery questions will be resolved by counsel themselves")); (3) the claimants' attorney did not include a Rule 201(k) statement in the motion; and (4) counsel lacked a good faith basis to file a section 155 claim on December 31, 2015, just two weeks after faxing the medical bills to State Farm, and State Farm's actions subsequent to the filing are not relevant to the section 155 claim.

¶ 30    We decline to resolve the parties' arguments, because the record does not disclose why the circuit court denied the motion to compel. When a circuit court ruling is reviewed for an abuse of discretion, an appellate court generally will not reverse the ruling in the absence of a record showing the basis for the circuit court's decision. See *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 22, 39 N.E.3d 589. "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the circuit court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959. All we have is the order denying the motion without further explanation. The record the claimants tendered for our consideration does not include a transcript or acceptable substitute for a transcript of the hearing in which the circuit court considered and denied the motion for additional discovery. *See* Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017) (appellant shall file a transcript but may resort to a bystander's report or an agreed statement of facts). We have no way to knowing what arguments were made and which facts and principles persuaded the court to enter the order. We must presume that the court acted in conformity with the law and ruled properly after due consideration. *Foutch*, 99 Ill. 2d at 391-92,

459 N.E.2d at 959; *Webster v. Hartman*, 195 Ill. 2d 426, 433-34, 749 N.E.2d 958, 962 (2001).

Accordingly, we affirm the circuit court's denial of the motion to compel discovery.

¶ 31    The claimants next argue that the crossmotions for summary judgment should have been resolved in their favor. They contend they were forced to file suit to enforce their rights to coverage, and that nearly a year later, Klingaman's supervisor, Johnson, admitted at his deposition in December 2016 that he was aware that the claims for medical payments coverage had not been paid. The claimants state that State Farm's "so called investigation" was not prompt and that the insurer has not offered an explanation for why it waited nine months after the suit was on file to send Sylvertooth's claim for an independent medical review. The claimants also take issue with the fact that the claims were sent to arbitration and they contend State Farm had "no [l]egitimate [l]egal" grounds for requiring those proceedings. They contend there also was no justifiable reason to delay paying Dabney and McGee after July 2016, which was when the insurer obtained sworn statements supporting the medical bills submitted in December 2015. As for Sylvertooth, they contend there was no justifiable reason to delay paying her $1385 emergency room bill and $360 emergency room physician bill because her overall claim exceeded the $5000 limit of her medical payments coverage.

¶ 32    State Farm responds that there is no issue of material fact as to whether it had a *bona fide* dispute with the claims for medical payments coverage, thus precluding a section 155 award as a matter of law. State Farm emphasizes that the arbitrators awarded Dabney and Sylvertooth less than they claimed, and State Farm contends that although McGee was awarded the full claimed amount of $3503, an insurer does not need to prevail on its defense for there to have been a *bona fide* disagreement.

- 13 -

¶ 33    "Whether an insurer's conduct is vexatious and unreasonable is a matter committed to the trial court's discretion, and that determination will not be reversed on appeal absent an abuse of that discretion." *McGee*, 315 Ill. App. 3d at 681, 734 N.E.2d at 151. The abuse of discretion standard will also generally govern an appeal from a decision regarding attorney fees and costs under section 155. *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 29, 31 N.E.3d 311. However, when "the circuit court denies section 155 relief via a dispositive motion," as the circuit court did in this case when it resolved the summary judgment arguments, the governing standard of review is the standard appropriate for the motion. *Illinois Founders*, 2015 IL App (1st) 122481, ¶ 29, 31 N.E.3d 311. Accordingly, we will apply the principles that govern summary judgment.

¶ 34    We review the entry of summary judgment *de novo*. *Illinois Founders*, 2015 IL App (1st) 122481, ¶ 30, 31 N.E.3d 311. Summary judgment is appropriate where the pleadings, deposition transcripts, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Illinois Founders*, 2015 IL App (1st) 122481, ¶ 30, 31 N.E.3d 311. In addition, where the parties file crossmotions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law. *Daniel v. AON Corp.*, 2011 IL App (1st) 101508; ¶ 2, 952 N.E.2d 638.

¶ 35    Section 155 provides " 'a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.' " *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 680-81, 734 N.E.2d 144, 151 (2000) (quoting *Richardson v. Illinois Power Co.*, 217

Ill. App. 3d 708, 711, 577 N.E.2d 823, 826 (1991)). "The attorney fees, costs, and limited penalty provisions of section 155 are an extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct." *McGee*, 315 Ill. App. 3d at 681, 734 N.E.2d at 151.

¶ 36    Section 155 states:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (1)(a) through (c) (West 2014).

¶ 37    Section 155 "does not create a duty to settle, and a delay in settling a claim does not violate the statute if the delay results from a *bona fide* dispute regarding coverage." *McGee*, 315 Ill. App. 3d at 681, 734 N.E.2d at 151. Also, an insurance company does not violate section 155 "merely because it unsuccessfully litigates a dispute involving the scope of coverage or the magnitude of the loss." *McGee*, 315 Ill. App. 3d at 681, 734 N.E.2d at 151. Nevertheless, an insurer's claims

handling may be considered vexatious and unreasonable "if the insurer refuses to settle and proceeds to arbitration or trial without presenting a *bona fide* defense." *McGee*, 315 Ill. App. 3d at 681, 734 N.E.2d at 151. "*Bona fide*" in this context means " '[r]eal, actual, genuine, and not feigned.' " *McGee*, 315 Ill. App. 3d at 683, 734 N.E.2d at 153 (*quoting* Black's Law Dictionary 177 (6th ed. 1990)).

¶ 38    Because section 155 is punitive in nature and in derogation of common law, it must be strictly construed. *Morris v. Auto Owners Insurance Co.*, 239 Ill. App. 3d 500, 509, 606 N.E.2d 1299, 1305 (1993). "A court should consider the totality of the circumstances when deciding whether an insurer's conduct is vexatious and unreasonable, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property." *Illinois Founders*, 2015 IL App (1st) 122481, ¶ 31, 31 N.E.3d 311 (*quoting Statewide Insurance Co.*, 397 Ill. App. 3d at 426, 920 N.E.2d at 624).

¶ 39    The undisputed facts of this case indicate that the claimants were solely responsible for any "delay" that may have occurred in settling the medical payments coverage claims after reporting the accident in May 2015 and that State Farm did not act unreasonably or vexatiously as it worked with counsel to conclude the claims. The record indicates that the claimants provided the insurer with insufficient information to process the claims before they filed suit at the end of December 2015, despite the insurer's repeated requests between May and December 15, 2015 for necessary information. The record also indicates that after it was sued on December 30, 2015, State Farm continued its reasonable efforts to resolve the legitimate questions it had as to whether the claimed injuries were covered by the policy. State Farm reasonably relied on the initial police report stating that Sylvertooth was the only occupant of her vehicle and that she reported no injuries, when State

Farm subsequently questioned whether Dabney and McGee were also in the vehicle and whether any of the three claimants were injured. When an insurer " 'reasonably relie[s] upon evidence to support a *bona fide* dispute,' that insurer has not acted unreasonably or vexatiously under section 155." *Illinois Founders*, 2015 IL App (1st) 122481, ¶ 32, 31 N.E.3d 311 (*quoting Morris v. Auto-Owners Insurance Co.*, 239 Ill. App. 3d 500, 506, 606 N.E.2d 1299 (1993)). State Farm did not let the claims languish and immediately reassigned the file for resolution by a senior claims handler in the insurance company's special investigations unit. That claims handler, Klingaman, then repeatedly contacted the claimants' attorney, to request medical bills and records and sworn statements, but it was months before counsel complied with those requests. Dabney and McGee's medical treatment was relatively inexpensive and short, but they demanded arbitration of their UM claims involving the same medical expenses at issue in their medical payments coverage claims. In light of the circumstances surrounding Dabney and McGee's claims, it was reasonable and not vexatious of State Farm to have the claims evaluated by the arbitrator. At counsel's request, however, the arbitration that was scheduled for mid-September 2016 was continued until mid-December 2016. Within a week of the December 2016 arbitration decision, State Farm issued full payment of the arbitrator's awards to Dabney and McGee. Sylvertooth's treatment continued and would become the subject of a separate arbitration. Sylvertooth's vehicle was still driveable after the collision, and she used that vehicle to drive to the police station, return home to allow one of her friends to retrieve her own vehicle, and to go to the emergency room. The emergency room physician diagnosed a relatively minor injury and released Sylvertooth the same day. Given Sylvertooth's long and expensive medical treatment following a relatively minor collision and the emergency room record of a minor injury, State Farm reasonably sent Sylvertooth's claim for

evaluation by an independent medical expert. State Farm sent the file before it had all of the medical records it requested, and then as a few more records were tendered by Sylvertooth's medical providers, State Farm forwarded those additional records to the expert. The expert's conclusion of a relatively minor injury was consistent with the emergency room evaluation and indicated in part that time had helped the injury heal. Within two weeks of the expert's report that Sylvertooth's claim exceeded $5000 but less than the amount she was claiming, State Farm paid the $5000 limit of Sylvertooth's medical payments coverage.

¶ 40     The claimants incorrectly state that they were forced to file suit to resolve their medical payments coverage claims and that State Farm improperly required arbitration. In our opinion, a court could not resolve the claims because the State Farm insurance contract includes an arbitration clause. The "Arbitration" provision reads "1. If there is a disagreement as to whether incurred charges are medical expenses, then the disagreement will be resolved by arbitration upon written request of the insured or us." Thus, any disagreement about whether the claimed medical expenses were in fact covered by Sylvertooth's policy could be determined only through arbitration, rather than through litigation. Furthermore, the record makes clear that State Farm disputed its liability, that State Farm took a reasonable amount of time to accomplish the tasks of investigating and issuing payments, and that the claimants shoulder most of the responsibility for the amount of time it took for them to be reimbursed under the medical payments coverage provision. As we outlined above, the record on appeal shows that the claimants failed to submit any medical documents between May 2015, when the accident occurred and December 2015, when counsel finally faxed hundreds of pages of medical records and bills to the insurer. The record also indicates that State Farm had to repeatedly ask for signed release forms (which it was contractually entitled to receive)

so that State Farm could investigate the injuries that the claimants attributed to the collision. Furthermore, the claimants did not provide sworn statements until after they filed suit. In other words, the claimants provided incomplete information before filing suit and were slow to comply with the insurer's efforts to finish its investigation and pay the claims.

¶ 41    The claimants cite Johnson's deposition testimony as indication that the insurer unjustifiably withheld payment. The claimants are disregarding Johnson's additional statements that State Farm received conflicting information as to whether there were any covered medical expenses.  Johnson testified that before State Farm received any medical bills, the insurer received a police report indicating there were no injuries. Johnson said that State Farm then needed to investigate which medical expenses, if any, were reasonable and necessary as result of the accident. Johnson said that State Farm's investigation was intended to rule out any pre-accident injuries and confirm that the medical treatment the three women received was attributable to the accident. Johnson said State Farm would need to review the initial medical records before it knew whether it needed additional medical records, and that the insurer might also need photographs of the vehicle damage and a repair estimate. In other words, Johnson indicated that the insurer would gather and analyze information, following leads until it had a clear picture of what occurred and what was covered. Johnson's deposition testimony shows that the insurer had reason to doubt whether it was liable for any of the claimed medical expenses. The testimony negates the claimants' contention that as soon as State Farm had Dabney and McGee's emergency room records and sworn statements, the insurer should have paid their claims, and negates the contention that the total amount of Sylvertooth's claim dictated that the insurer at least pay the relatively small limit of her medical payments coverage.

¶ 42    The record indicates that the three claimants requested medical payments coverage and UM coverage for the same medical expenses. Dabney and McGee's UM claims were addressed together in a single arbitration proceeding. State Farm then treated the UM award as determinative of Dabney and McGee's medical payments coverage claims, and a week later, State Farm paid the awards in full. Sylvertooth's more complex and costly claims for medical payments coverage and UM coverage were reviewed by a medical expert, Dr. Clark. After Dr. Clark gave State Farm his conclusions on December 31, 2016, State Farm agreed that Sylvertooth had a right to at least the $5000 limit of her medical payments coverage, but less than the $233,542 she was claiming under her UM coverage. Accordingly, State Farm paid Sylvertooth the full $5000 medical payments coverage on January 11, 2017. When Sylvertooth's UM claim was later arbitrated, the arbitrator awarded Sylvertooth far less than she claimed, which State Farm cites as an indication that it was justified in disputing and delaying the resolution of Sylvertooth' request for any coverage.

¶ 43    The procedural history clearly refutes the claimants' contention that a lawsuit was necessary to recover their medical expenses. There was a *bona fide* dispute as to coverage and once that disagreement was resolved through arbitration, State Farm was quick to pay Dabney and McGee and then Sylvertooth. The facts and legal principles demonstrate that State Farm was entitled to summary judgment as a matter of law.

¶ 44    Having considered the appellate briefs, the record compiled for our review, and the governing legal principles, we affirm the circuit court's resolution of the motion to compel discovery and the crossmotions for summary judgment in favor of State Farm and against the claimaints.

¶ 45    Affirmed.